SUPERIOR ENGRAVING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7949, 17814. Promulgated October 20, 1927.

Personal service classification allowed.

*Paul E. Hutchinson, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the respondent.

The Commissioner refused to allow the petitioner personal service classification and determined deficiencies in its income and profits taxes for the calendar years 1919, 1920, and 1921, in the respective amounts of $4,164.20, $3,978.73, and $1,967.32. The two appeals were consolidated for hearing and decision.

FINDINGS OF FACT.

The petitioner was incorporated in March, 1916, under the laws of the Commonwealth of Pennsylvania. During the years 1919 to 1921, inclusive, it conducted its business in a single room in the City of Pittsburgh.

At the date of incorporation Harry E. Tracey, John H. Hartrauft, A. H. Girdwood and William S. Girdwood each paid in $500 and received 10 shares of stock. Later 15 additional shares were issued to each for services. They were the only stockholders and were all regularly engaged in the active conduct of the affairs of the corporation. In 1919, $4,500 was paid to each as salary. For 1920 and 1921, this was increased to $4,800. Each stockholder was an experienced man in his particular line of work.

The petitioner by the use of drawings and photographs planned and created designs suitable for advertising articles or events, photographed the designs to obtain wet-plate negatives, by use of the negatives and supplementary hand processes etched the designs on metal, and finished the etched plates so that they could be used for printing advertisements.

Each plate was made to order to conform to the special requirements of the customer. No plates were ever carried in stock. When finished, a plate consisted of a block of wood supporting a thin piece of metal on which there was an etched design. The cost of the wood and of the metal was small in comparison to the price charged for the finished plate. The time and skill required to make the plate were important factors in determining its price.

Tracey met the customers and did or supervised all of the art work in connection with the planning and creation of the designs to meet their requirements. The designs were then turned over

to Hartrauft who did or supervised all of the photographic work and made the wet-plate negatives of the designs reduced to the proper size for printing. W. S. Girdwood then etched or supervised the etching of metal plates from the negatives. A. H. Girdwood finished and mounted or supervised the finishing and mounting of these plates which were then ready for use in printing. They were delivered to the customers and at the end of the month bills were sent out for the plates finished during that month.

Each of these stockholders had one or more skilled assistants who were nonstockholders. Each assistant under the direct supervision of some one of the stockholders did the same sort of work as that done by that stockholder whom he assisted. There were eight such assistants. Other employees were a bookkeeper, a stenographer, and several messengers. The nonstockholding employees were not capable of carrying on the business.

The petitioner's income and allowable deductions for the years were as follows:

| | 1919 | 1920 | 1921 |
|---|---|---|---|
| Gross sales | $73,040.20 | $83,437.21 | $81,000.03 |
| Deductions: | | | |
| Materials and supplies | 8,767.45 | 7,932.42 | 6,070.10 |
| Salaries (nonstockholders) | 22,482.05 | 26,985.05 | 31,247.22 |
| Salaries (stockholders) | 18,000.00 | 19,200.00 | 19,200.00 |
| General expenses | 2,415.52 | 2,372.40 | 4,047.81 |
| Rent (and taxes in 1920) | 1,200.00 | 1,246.50 | 1,200.00 |
| Light and power | 1,117.24 | 1,173.63 | 1,207.35 |
| Depreciation and repairs | 734.31 | 657.55 | 786.69 |
| Interest and discount | 231.69 | 1,877.53 | 2,014.66 |
| Office expense | 108.00 | 356.20 | ---------- |
| Office pay roll | ---------- | 3,500.00 | 3,437.75 |
| Bad debts | 468.96 | 723.29 | 600.17 |
| Furniture and fixtures | ---------- | 239.76 | 664.58 |
| Machinery and tools | ---------- | 320.27 | 854.71 |
| Total | 55,525.22 | 66,584.60 | 71,331.04 |
| Net income | 17,514.98 | 16,852.61 | 9,668.99 |

The petitioner's balance sheets were as follows:

| | Dec. 31, 1918 | Dec. 31, 1919 | Dec. 31, 1920 | Dec. 31, 1921 |
|---|---|---|---|---|
| ASSETS | | | | |
| Machinery and tools | $4,075.59 | $4,089.20 | $5,724.26 | $6,292.17 |
| Supplies | 1,364.74 | 1,136.77 | 1,491.65 | 1,002.73 |
| Furniture and fixtures | 1,158.87 | 1,627.06 | 1,710.56 | 2,006.98 |
| Cash | 2,840.43 | 3,619.95 | 3,238.44 | 3,722.36 |
| Accounts receivable | 7,214.94 | 9,436.98 | 11,033.28 | 11,204.47 |
| | 16,654.57 | 19,810.02 | 23,198.19 | 24,228.71 |
| LIABILITIES | | | | |
| Accounts payable | 2,153.36 | 2,357.59 | 2,535.60 | 2,210.44 |
| Bills payable | 1,599.30 | ---------- | ---------- | ---------- |
| Due officers | 4,512.00 | ---------- | ---------- | ---------- |
| Reserve for depreciation | ---------- | 547.54 | 1,205.09 | 1,991.78 |
| Capital stock | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Surplus | 3,389.91 | 11,904.89 | 14,457.50 | 15,026.49 |
| | 16,654.57 | 19,810.02 | 23,198.19 | 24,228.71 |

In the above balance sheets " accounts receivable " consisted chiefly of sales for the month preceding the date of the balance, " machinery and tools " consisted of two cameras, photographic equipment, hand engraving tools, routing machine, etching baths, printing frames, beveling machine, jig saw, drill, and the like; and " supplies " consisted of wooden blocks, sheets of zinc, copper, and other metals, acids, chemicals, photographic supplies, paper, brushes, ink and colors.

### OPINION.

MURDOCK: A careful analysis of the balance sheets and yearly expenses made in connection with the other evidence in the case convinces us that capital was not a material income-producing factor with this corporation. All of its stockholders were regularly engaged in the active conduct of its affairs. Each was able to perform and each performed one of the necessary steps in the creation of a valuable and salable thing from an inexpensive raw material.

It is contended that when this finished product was sold the petitioner was trading as a principal and that therefore it can not receive personal service classification. We do not believe that the phrase " trading as a principal," used in section 200 of the Revenue Acts of 1918 and 1921, was ever intended as a bar to personal service classification where, as in this case, the customers of the petitioner in purchasing the finished product really purchased the skill, ability and service of the men who made it.

There remains for our consideration the only other question raised by the respondent, viz, Is the income of this corporation for the years in question to be ascribed primarily to the activities of the principal owners or stockholders? It employed eight skilled nonstockholding workmen whose duties and whose abilities differed but little from the duties and abilities of the stockholders. The salaries of these men were steadily increasing in importance in the petitioner's finances. However, the uncontradicted testimony is that the corporation, without these employees, had been able to function and produce an equal amount of income, whereas the corporation could not have functioned without the labor, skill and supervision of the stockholders. There was also testimony that a large part of the work of these assistants was to carry out details which required skill of a kind, but of a different kind and of a lesser degree than that of the supervising stockholders. Consequently we hold that the income of this corporation is to be ascribed primarily to the activities of the principal owners or stockholders, and that for each of the years 1919, 1920, and 1921, the petitioner was a personal service corporation

within the meaning of section 200 of the Revenue Acts of 1918 and 1921. See *Cocks-Clark Engraving Co.* v. *Commissioner*, 8 B. T. A. 468.

Reviewed by the Board.

*Judgment will be entered on notice of 15 days under Rule 50.*